May it please the Court, Anne Hester representing Raymond Surratt. Ms. Hester, let me ask you a jurisdictional question first before we get into everything else. You have argued that the 2255E provisions are non-jurisdictional to claim processing. And have basically advocated the position I think the Seventh Circuit has taken. And I think Post, Gonzalez, the Seventh, and the Eleventh have set out pretty good arguments on both sides of that issue. And you can tell us why you think that is the right way to go, which would require overruling Rice v. Riviere. But I'd be particularly interested if that was the decision of this circuit to overrule Rice, what would happen in this case? Well, in this case, relief would be granted. Relief granted here or remanded? Remanded for relief to be granted because there's no dispute on the merits of this case. There are three reasons why the traditional tools of statutory construction don't plainly show that this provision is jurisdictional. First of all, the Savings Clause uses a phrase, which is, shall not be entertained, which Congress has used in only two other contexts, both of which are statutes of limitations. And statutes of limitations are almost never jurisdictional, so Congress's use of this phrase reflects an intention to treat the Savings Clause like statutes of limitations. And that makes sense. How would you differentiate that language from the language in 2253C1 that the Supreme Court did find to be jurisdictional? Well, the difference here is 2253 is a jurisdictional statute. It gives the Courts of Appeals jurisdiction to hear appeals from 2255 cases in certain circumstances. And I think that this case in the Supreme Court has held that that is an important consideration in determining whether a provision is jurisdictional or not. A more comparable provision is the one in Reed-Elsevier v. Muchnick, which was not a jurisdictional statute. And there the Court held that a phrase saying, no civil action shall be instituted, was not jurisdictional. So this case is more similar to Reed-Elsevier than it is to the Miller-El versus Cockrell case because 2253 is a jurisdictional statute. 2255 is not a jurisdictional statute and 2255E doesn't mention jurisdiction. And that contrasts with 2241, for instance, which is a jurisdictional statute. And when it divests the Courts of Jurisdiction, it specifically uses the term jurisdiction. And the Supreme Court also has repeatedly held that the term shall is not jurisdictional. And that Reed-Elsevier case, for one, and also in the Quy-Son-Wong case, where some pretty mandatory language, which is shall be forever barred, was held to be not jurisdictional in the context of statute of limitations. And again, the Congress has put this provision on a footing with statute of limitations by using the same kind of language here that it has only used in statute of limitations. Under that position, Ms. Hester, would a first-time filer then be barred by the statute of limitations? Or would the first-time filer simply be able to walk in, notwithstanding our decision in Whiteside? What is your position? How do you reconcile this statement, that it's akin to a statute of limitations, entitling the defendant to relief under the savings clause with our decision in Whiteside? Well, it's the same principle, because the government can waive the statute of limitations just like it can waive this provision. And in Whiteside, the government didn't waive the statute of limitations, and that's why we have problems there. So you're saying it's just the fortuitous fact that the government has waived it, saves it, that it would otherwise be enforceable in all cases? Doesn't that detract from the language of the savings clause itself and undercut your argument? Not if we're talking about the jurisdictional issue. I don't think so. Because it's putting the savings clause on a footing with the statute of limitations, which is another procedural bar that the government is able to waive. Right, but the savings clause uses the adjectives inadequate and ineffective. Right. Okay, so some sort of measuring and balancing has to be done. Does it not under that? But are we still talking about the jurisdictional question, or are we talking about the... Well, I'm asking about Whiteside. About the statute of limitations? Yes. Well... And what happens to the rest of 2255E under your position? Well, under my position, the government's consent, the government is free to consent to relief under 2241. That doesn't waive the merits of the claim. Okay, so you're saying if the government hadn't waived, then it would be entirely different? Yes. Yes, that's what I'm saying. Your position would be it would be a jurisdictional bar? No, not that it's a jurisdictional bar, but it would be a mandatory bar if the government doesn't waive the statute of limitations. But it would nonetheless bar the action but for the government's concession, in this case, or agreement to waive. Well, I'm not saying that Mr. Surratt doesn't have entitlement to relief under the savings clause, if that's what you're asking. I'm saying that the reason that it's not jurisdictional... Well, it's not jurisdictional, and the government is free to waive, and it has done so here. But there's another reason why he is entitled to relief under the savings clause. If you could just follow up, because I'm trying to follow it and I'm not sure I am. Judge Kinnan's question about what happens when the government does not waive, because you're proceeding on the assumption that it does. Okay. What's the effect? Okay, I think I'm just not understanding the question. What happens when the government does not waive is that we have to go back and decide whether the petitioner has satisfied the requirements of the savings clause. And the court should hold the savings clause relief is available when a petitioner's claim does three things. First of all, it relies on a retroactive decision of statutory interpretation. Second, it was foreclosed by circuit precedent through the time of his initial 2255 motion. And third, it exposes a fundamental sentencing defect that results in a miscarriage of justice. In Henry Jones, the fundamental defect was actual innocence of the offensive conviction, but Jones allows for the possibility that some sentencing claims could amount to a fundamental defect. But Jones was limited solely to, in fact, the only place it used the phrase in a footnote, fundamental defect, was to say a fundamental defect is actual innocence of a crime. But it did rely on decisions that found fundamental defect to be the basis. It's relying on the Davis v. United States case in the Supreme Court, where the Supreme Court talks about actual innocence being a fundamental defect or miscarriage of justice. Heretofore, fundamental defect has essentially been a term of art used in a first 2255, not a second. Is that right? That's true, except for the four circuits that have used it in the savings clause, which would include Brown v. Carraway and Bryant v. Worden, where sentencing defects were found to be fundamental and relief was granted. But your position is basically a pretty open-ended one, which is that 2241 relief is available under the savings clause any time that an initial 2255 motion was foreclosed by existing law. Any time an initial 2255 petition is foreclosed by existing law, you think that's inadequacy and ineffectiveness under 2255E. That's where it seems to me your position heads. That's right. If that's the case, that seems to me just incredibly open-ended because one can always litigate forever the question of whether something is or is not foreclosed by existing law or whether it was partially foreclosed or to what extent it was foreclosed. And what you're saying is that essentially the statute of limitations doesn't matter, particularly if the government waives it, and you don't have to get any kind of preauthorization permission from the Court of Appeals the way you normally would in a second or successive petition. And we're going to accord retroactive effect to circuit law, and we're going to accord retroactive effect to non-constitutional rulings, and we're going to find retroactive effect of a decision where there's no question of factual innocence of either the instant offense or of the various predicate offenses. And I've never seen something as open-ended as this. You take words like inadequate and ineffective, and then you take words like a miscarriage of justice under the third prong of your test. We are going to be swamped, literally swamped, with something that is open-ended as what is proposed here today. And perhaps that's just a matter of our own convenience. Nothing more, nothing less, and it shouldn't weigh in the balance. But what troubles me from a more fundamental standpoint is this sentence was imposed under the law as it existed at that time. No one disputes that the rule of law was properly applied. There was no abrogation of due process. The sentence was within the statutory maximum. There was no error. Normally, subject to very limited collateral exceptions, collateral review is to impeach an illegality in the direct proceedings. But there was no illegality here. It's just a change in the law. And changes in the law and in circuit law occur all the time. We are going to be literally overrun with petitions in situations where the underlying conviction shows no indication of innocence and where it was imposed in accordance with law, with the rule of law. There was no infirmity here. Why should we buy off on something that is this broad and that admits of no limiting principle? Well, Your Honor, first of all, the sentence was not imposed according to the law because when the court makes a decision of statutory interpretation, it interprets the law as it has always been. Congress never changed the statute. North Carolina never changed their statute. That's an important recognition of the limitation of that premise that this was all done in accordance with the rule of law. Sure it was, but every mistake here was done by the court. Congress didn't change the law. No one has changed the law. The court has done it. And the end result is that we've got to work harder because a man has to stay in prison for life as opposed to perhaps a lesser term he may be entitled to. We can only blame ourselves in the manner in which it came about. You said to me just now in response to my question that this was not imposed in accordance with law because it was a statutory interpretation question or whatever. But the point is that HAARP, whether we don't like it now, we've overruled it, I understand it, I totally accept it, but at the time, HAARP was the law. The law is a combination of the statute and the decisions of this court that interpret it. It's the best we have. And HAARP was then the law, and he was sentenced in accordance with that decision. Well, Rivers v. The Supreme Court disagrees in Rivers v. Roadway Express. I mean, there the court says that the law, when the court interprets a statute, it says what the law has meant all along. But there are four reasons why Surratt's erroneous life sentence is a fundamental defect. First, the Supreme Court has repeatedly recognized life without parole is unlike any other sentence short of the death penalty, and erroneously imposing it raises special fairness concerns that are not raised by a term of years. But also, as the Supreme Court explained in Miller v. Alabama, mandatory life is a harsher and different punishment than discretionary life imprisonment. And you can see that here. I assume this is a premise to each of the arguments that you want to make, but I'm assuming from your answers to the earlier questions that following Jones you would base your argument on having as a prerequisite a new circuit court decision. Overturning prior circuit decision, yes. It strikes me as odd that that would be an acceptable argument under 2255. In view of the care it would appear Congress took in writing that statute and limiting access to post-conviction relief in a number of circumstances. Obviously, H-2 limits on Supreme Court decisions made retroactive in two very narrow circumstances. You also look in F-1, which is a limitations period, where it does very specifically address Supreme Court cases not limited to constitutional issues or to evidence of actual innocence, but also with respect to new rights that could be statutorily recognized and made retroactively applicable by the Supreme Court. Then it would strike you as odd that Congress would take that much care to spell out these rationales and the limited windows of opportunity limited to the Supreme Court and never mention circuit courts. No, because Congress left in the Savings Clause as a fail-safe. The Savings Clause does not require a Supreme Court decision. Jones does not require a Supreme Court decision. I think further you have to take into consideration that if you... I understand that, but really the question goes to Congress has been very specific and it is the authority for all intents and purposes except in that rare circumstance when the Suspension Clause comes into play that is entitled to limit access to post-conviction review. And here this is Congress writing through AEDPA and other predating statutes, always limitations on this sort of relief. And it strikes me as exceptionally odd that there would be this enormous window, as you view it in the Savings Clause, never mentioned by Congress and very specifically limiting all the relief to Supreme Court cases. Well, I think you have to look at the H2 provision and the Savings Clause and understand that each one of those provisions covers some things that the other does not because the Savings Clause requires inadequacy or ineffectiveness. Well, H2 does not require... In other words, inadequacy or ineffective to test. And every time that argument comes up, it's not just ineffective and inadequate, but it's to test and in this case that's a procedural term. And in this case, the to test was not foreclosed by 2255. The to test was foreclosed because the circuit law foreclosed him from making that claim. Substantive. He could make the argument and he'd lose because the law at that time provided that he would lose. Hart was the law at the time. But he was able to test it and the whole process was... 2255 was intended to be parallel to 2241. 2241 was not designed or the escape clause was not designed to provide an end run around the 2255. And so long as the 2255 was available to test, it seems to me, and in this case it was available to test, you don't have such a broad opening in the Savings Clause as Judge Wilkinson has pointed out. If you eliminate the to test and just use those two terms and say anything that's unfair or fundamentally unfair can bypass it, then you're just basically overwriting all of 2255. Can I respond? Sure, please. Two things. First of all, the to test interpretation... It's the language of the statute. But the court rejected, I mean, the Congress rejected a previous iteration of that statute that would limit that just to procedurally being unable to get to the court. So it's more than just the getting to the court. And also the Supreme Court in Swain and I believe Sanders makes pretty clear that there's a substantive component to that question. And also I'd point out to the court that of the eight circuits that have ruled on this, I believe seven of them have held that the foreclosure test does apply. Thank you. Ms. Mailey. May it please the Court, Erica Mailey representing the National Association of Criminal Defense Lawyers, amicus in support of Mr. Sherratt. In addition to the reasons given by the United States and Mr. Sherratt, the interpretation of the Savings Clause as they advance should be adopted under the canon of constitutional avoidance because a contrary interpretation would raise serious constitutional concerns. As many courts have recognized, one of the purposes of the Savings Clause is precisely to avoid any doubt as to the constitutionality of 2255, making application of the canon particularly crucial to a correct interpretation of the clause here. Interpreting the Savings Clause to prohibit recourse to habeas corpus for mandatory minimums that were wrongfully imposed under erroneous statutory interpretations required by binding precedent at the time of the prisoner's 2255 motion raises a number of serious constitutional questions, including under the Due Process Clause and the separation of powers doctrine. First, the interpretation raises serious questions under the Due Process Clause. Pursuant to the Supreme Court... How would that differ from all the decisions after Booker that decided the imposition of sentence when the guidelines were mandatory was this not constitutionally offensive? Your Honor, the difference there in Booker is that you don't have a substantive fundamental defect because while Booker held that the sentencing guidelines were not mandatory, the sentencing guidelines would still remain substantively the same. But the applicability, the extent to which they would bind the courts was completely different. Yes, the extent to which they would bind the courts was completely different, but they would remain in place as advisory and in the majority of circumstances, they still would have been followed as advisory. And for that reason, courts held that... Do you mean post-Booker or after Booker? For people who were sentenced pre-Booker, the holding that the Booker was not retroactive requiring all those people to be resentenced, a lot of the reasoning behind that was because in most of the cases, the same sentences would have been imposed. Here, by contrast, Miller held that Simmons was a retroactively applicable decision because substantively it changed the punishments that could be imposed for a class of defendants due to their status or offense. And that's because it alters the mandatory minimum sentences applicable to the crime. And in that way, it's much more like Hicks v. Oklahoma, where the Supreme Court said that if the sentencer is wrongly stripped of discretion due to a mandatory minimum error, that does raise due process concerns because the defendant has a liberty interest in the exercise of that statutorily provided discretion. So, Ms. Mailey, let me make sure that I understand what you're saying. Are you saying then that under the principle of constitutional avoidance, the relief available to someone in Surratt's procedural position is essentially the same as a first-time filer under 2255? That that is required to give him exactly the same relief that would be available had he been a first-time filer under 2255? I believe that's correct, Your Honor, to give him essentially that because he hasn't had previously a meaningful opportunity to have those rights vindicated, and as would ordinarily be the case in 2255, that raises a serious constitutional concern. And to put him in that position as though the claim had not been foreclosed by precedent would redress those constitutional concerns. Does that just become a new rule on retroactivity of application of cases? Isn't that the net effect of it? Retroactivity, we have rules on retroactivity. Doesn't this net a new rule on retroactivity? No, Your Honor, because it would only apply to rules that are retroactive. If you had an instance such as Booker, as we were discussing, where the rule is not retroactive, then the savings clause would not be triggered and we would not have those constitutional concerns. But to have a rule that is retroactive, as Simmons is retroactive, and still to not give the defendants in that position any chance to raise that. Well, is it an extension in scope of that retroactivity then? No, Your Honor, I would say it's... Because those people can't raise it otherwise, is my point. If I may respond, it's not an extension in retro... Of the scope, I said, of the scope. It would be an extension of the consequences, one might say, in finding a rule retroactive, but the rule would have to be retroactive under the Teeth Doctrine before it would trigger the savings clause. Thank you very much. Mr. Dreeben. Thank you, Chief Judge Traxler, and may it please the Court. I'd like to start where Judge Wilkinson began the discussion, which is what is the scope of the rule that's at issue for this Court and what are the implications for finality? In the government's view, this case implicates a very narrow but important and logical extension of the doctrine of this Court's decision in Reed-Jones, which represents essentially the law in nine circuits, one circuit disagreeing. And that is when an intervening decision has fundamentally altered the substance of the criminal law by either altering the definition of the crime or changing the boundaries of punishment. It has worked a significant and retroactive... All of those circuits have limited their decision to cases of actual innocence of the crime or legal innocence. Isn't that correct? Judge Agee, I think that the only two courts that have squarely addressed this situation where a statutory ruling was incorrect as to the boundaries of sentencing authority, both of those circuits, the 11th and the 7th circuits, have found that there is a cognizable claim under the savings clause. I will certainly grant that there is language in several different... I think the 11th circuit case is a little bit different. We'll talk about that later because that raises a whole different set of issues. But all those other cases were actual innocence of the crime cases or they were, like Jones, a derivative of the Supreme Court decision on use of the firearm. So the cases that have granted relief are much like in Reed-Jones in the sense that the Supreme Court or a court of appeals had reinterpreted a statute that defined the elements of the crime in a way that was narrower. But your articulation of the test to us, that you used the words change the boundaries of sentencing law, well, we have circuit decisions that change the boundaries of sentencing law all the time. You say, well, it's only a statutory change in the boundaries of sentencing law. But no, this was a decisional change in the boundaries of sentencing law from Harp to Simmons. So what is the limiting principle to the phrase that you just used? If any change in the boundaries of sentencing law, including a change in circuit decisional law, is going to open up the savings clause, I realize the term Parade of Horribles and Floodgate is used far too promiscuously. But here, it's a real concern. And there's no formulation that I've heard that alleviates the concern. Perhaps you can narrow the phrase changes in the boundaries of sentencing law for me. Well, I think that it's changes in the statutory boundaries because that implicates the fundamental separation of powers concern at the heart of the definition of crime. How is this a statutory change when we move from Harp to Simmons? It's an interpretation of the statute. Congress all along... But that happens all the time. And why wouldn't the guidelines have the force of statute? And there can be a change in interpretation of guidelines. And is that going to bring the savings clause into play? No, because the guidelines don't set the statutory boundaries of punishment. But they certainly made their advisory, I recognize, but they certainly set the boundaries of punishment. Well, they don't set the boundaries of punishment, Judge Wilkinson, because a court has the obligation to apply Section 3553A, consider the guidelines and impose a sentence that is sufficient but not greater than necessary to achieve the purposes of punishment within the boundaries that Congress has set. The problem in this case is that the court never operated within the boundaries that Congress set because of an error in law that was later corrected in Simmons, but that represented the interpretation of the statute from day one. The court believed that it had no sentencing discretion whatsoever, that the only punishment that was available was mandatory life. Mr. Dreeben, I understand and I'm sympathetic to the fact that you don't like the length of the sentence here. I don't like the life sentence here either. I don't like it. I'm with you on that. And I understand that you don't like mandatory minimums. I don't like them either. I'm with you on that. I just wonder whether this raises the question of hard cases making bad law, because to get where you want to go, you have to sweep away so many of the prerequisites to a second or successive motion. And you have to take all those limitations in 2255H and say they don't apply here. And this is really opening things up. I agree with that. That's why I'd like you to be able to see if you can address them. So I don't think that it is opening up. First of all, we have had a jurisprudence for more than a decade, decade and a half, that has recognized that when an intervening change in statutory law produces the conclusion that the person has been convicted of something that is not a crime. This wasn't an intervening change in statutory law. It was an interpretive change. An interpretive change. So there's a difference, Mr. Dreeben. Well, Judge Wilkinson, I think that what was going on in Jones and all the other cases was a change in the interpretation of the law that corrected previous errors. When the Supreme Court in… When the case of actual innocence of the crime, almost uniformly. Yes, I agree with that. And that, I think, is the novelty of this case. We submit that there is a logical and limited extension of the Jones principle from cases in which the reinterpretation of the statute establishes… How do you go from factual innocence to sentencing error, factual innocence of the offense to sentencing error and say this is a logical and limited extension of Jones? It's not. It's a quantum leap. I don't think it is a quantum leap. In both cases, what you're assessing is what did Congress intend to be punished and how did it intend to be punished. We've got to start right there with that proposition. And there's the fundamental question that brings the judicial choice to us right now, what you just said right then. If you're going to take the fact that when a court decision is made it interprets the law of Congress as it is and then later on it's decided the word I would use is wrong, that that was wrong, that effectively means a man's liberty was given by that court decision more. It used to be a big thing in terms of liberty of a human being. We're not talking about a court decision that says he should have gotten more, he could have gotten the same. We're talking about a court decision that says it was wrong to give this man a longer term of period under that law. He could have gotten it, but you've got to do it under a different law. That's the fundamental difference. If we're going to start with this, you've got to deal with that premise right there, the effect of what Simmons was in light of Hart. Because if you're going to accept that all Hart was, we were just doing our job and we just made a mistake and so what? Submit agrees we made a mistake. Defendant agrees we made a mistake. The court doesn't like the fact it's getting ready to do some more work, so let's look at the procedural rules and stick to them right to the teeth and make sure we don't get a floodgate of work based upon an interpretation we made wrong in terms of existing congressional law that's the exact law it was when this man was sentenced. So I agree, Judge Wynn, that the point of retroactivity doctrine is to establish what new decisions will be applicable on collateral review. And it is well settled that substantive criminal law decisions are retroactive. I think that that answers the question about when the error occurred and whether a change in law somehow unsettles past practices. Retroactivity answers that question. There are retroactive applications, but the problem is when you have words as open-ended as inadequate or ineffective, you can let retroactivity doctrines run riot and Congress addressed the specific question of retroactivity for second or successive motions and it addressed it in H-2. And retroactivity applies to a new rule of constitutional law. This is not a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court. And this has not been made retroactive by the Supreme Court. And Congress has laid down the conditions for retroactivity in 2255H and this is not one of them. That is correct. And this is not a 2255H case. That is correct. Both of those points are correct. And I think that this Court confronted in the Jones case how does 2255H interact with 2255E, which Congress did not abrogate when it passed the AEDPA. And the conclusion is that under certain very limited circumstances, the circumstances that I have described... Could you go back over those? Go ahead. Thank you. You haven't really told us any limiting principle yet. Well, I think you have a chance to do so. Yeah. He's been trying. I appreciate the opportunity. Let me try to clarify. Judge Duncan, you have a question. I've forgotten. Oh, Judge Duncan. Let me take that long pass. No. It's my turn. I was interested in the dialogue that was beginning when Judge Motz followed up on Judge Wilkinson because I share the concern that I think you keep trying to get to, which would help me an awful lot, about the limiting principle. Because I had read in Reed-Jones as being very helpful that the limiting principle was if there were a case involving actual innocence. And I believe, if I understood it correctly, Ms. Hester was beginning to answer a question by referencing the very unique characteristics of mandatory life without parole. And I was not entirely sure, and you may not be either, but you're in front of me, so I'm going to ask you. Is that one of the limiting principles you foresee? And if so, what text do we rely on as support for your premise that that is, in fact, such a limiting principle? Judge Duncan, my limiting principle is, as I tried to state it at the beginning of the argument, intervening decisions of statutory construction that alter the substantive criminal law, either the definition of the offense or the boundaries of punishment. So whenever there is a change... This is not a broad rule. Well, actually, I think that remains open to question whether it's a broad rule. It could be very broad if there is an instance in which a court goes en banc and decides that a prior existing interpretation of the same statute is incorrect. So if your only limitation is every time we change the parameters of a sentence, that's a lot broader than I think Jones supports. Well, I wouldn't put it that way, Judge Duncan. It's not every time it changes the parameters of a sentence. That seems to me fairly vague. I'm sorry, your response seemed to me pretty vague. No, my apologies, your Honour. I am not critical of the test that you're discussing. What I'm trying to do is make it a little bit more precise. Thank you. And the precision that I am putting into it is perhaps best done by explaining how I think the movement from Jones to sentencing cases... No, actually, just the test would be fine. Right. Well, the test, as I've articulated, is an intervening decision of statutory construction that alters the substance of the criminal law by redefining the offence or establishing that a minimum or a maximum was erroneously implied. And this is why... Do you equate that to being a fundamental defect or a disparity to justice? Yes, I do think it is a fundamental defect, and I think that it is retroactively applicable as a decision of substantive law. It's very different from the multitude of procedural decisions that the court confronts. It's not like a guidelines claim. This was a statutory directive on what the mandatory minimum would be. Other cases, it could be what the maximum would be. And the way that courts have looked at this... And I think Judge Agee has a very apt point that most of the cases in this area have involved actual innocence. Well, in the 11th Circuit, in the Bryant case, looked at an instance in which an erroneous statutory interpretation had resulted in a man being sentenced above the correct maximum as properly understood. But that equally implicated a fundamental concern of justice because at that point... Where do you get that from the statute? I mean, that's a lovely peroration, but where is that in the statute? I mean, if you look at the actual statute, doesn't the specific control the general and the actual statute in 2255H is the specific here and it controls second or successive motions? And if we allow the words inadequacy and ineffectiveness to simply supplant Congress's very specific directives about second or successive motions, we're off to the races. And, you know, it struck me that your statement, frankly, was a statement of policy against sentences that are too strict and against mandatory minimums. I agree with that as a matter of policy, but I do not understand how the words you used in this argument come out of the statute. That test that you've articulated is nowhere to be found in the statute. So I am trying to reconcile the fact that Congress left in the statute 2255E and enacted 2255H with the fact that this court, as well as most other courts, have recognized that 2255H is not exhaustive because if it were, a case of a man like Mr. Jones, who's in jail for something that turns out not to be a crime, has no avenue of relief if he's previously filed a 2255. This court and the other courts that looked at it concluded that the presence in the statute of 2255E afforded the court's latitude in a narrow range of cases to provide relief, even though 2255H does not. But in this question, in this case, you want to read the savings clause as directly contradicting 2255H. 2255H limits application for a successive to a new rule of constitutional law made retroactive by the Supreme Court. You now want to say, but the exception is if there's a new rule of circuit law, a new rule of sentencing law made retroactive by a circuit court. So you're speaking directly to the language that is included in H and saying the exception now countermands that. This isn't something in a different kind like actual innocence of a crime. This is a situation where you're suggesting the exception directly overrules the specific because your couching of the exception is, in this sense, a sentencing error made retroactive by a circuit court. And yet the statute says it has to be a constitutional principle made retroactive by the Supreme Court. I think that reading of 2255H takes you to the point where a man like Mr. Jones stays in jail for the rest of his life for a non-crime. And this court rejected that and it concluded that 2255E, which is also part of the statute... Well, see, the statement you just made doesn't follow in this case either. That's very telling about the press. In this case, he remains guilty of the crime. There's no question about it. And not only that, the range of his sentence is 20 years to life. And so we're not talking about a man who's actually innocent, which is different in kind from H. What we're talking about is taking the very formulation of H and changing the word. It's not different from H because H1 provides for claims of actual innocence based on newly discovered evidence. So Congress did address some circumstances that it thought were compelling reasons to allow a second or successive petition, but it did not address intervening changes in statutory construction decisions. And that's the foundation stone of the court's analysis in Treisman, Dorsenville, Davenport, Jones, all of the cases that have recognized that an intervening decision of statutory construction presents a situation that 2255H did not address. It did address it because it indicated when changes in law should be accorded retroactive effect. So I think Judge Wilkinson... It does address it quite specifically. It addresses the whole question of changes, the very thing we're talking today. When should a change of law be accorded retroactive effect? And notwithstanding the fact that Congress has addressed, as Judge Niemeyer points out, that particular question before us today with extraordinary precision and specificity, we're going to overrule that specific directive and embark on some journey on the rules of inadequate and ineffective, which we're going to be litigating that. We're going to be litigating inadequacy and ineffective and what are the exceptions to the retroactivity set forth by 2255H. We're going to be litigating the question of when is something foreclosed. This is just... It is putting the entire criminal process on the back end to the neglect of cases on the front end. It is a major change and shift of emphasis on what our Constitution has put forward, which is, if you read the Constitution, its emphasis is on trial and on the front end of the criminal justice process, and your interpretation shifts the front-end emphasis of our Constitution on trial and direct appeal and puts it more and more on endless successive reviews of collateral attack. That is a sea change you're proposing to us. Can I explain? I think that there's a legal and a practical answer to that. The legal answer... I'm really trying to understand the legal argument here. I got the policy and practical implications and the sea changes. I really want to hear this argument that you're connecting up the sections of 2255 and how it is to be interpreted in light of the cases here. That needs to be a focus here, and then we'll deal with the practical implications if we have to, because we don't have a choice if the law tells us to do it. Let me start then with the legal framework here. The Supreme Court's decision in McQuiggan v. Perkins I think is very illuminating on the degree to which Congress's specification of one procedure in 2255 or 2254 excludes judicial recognition of other procedures that are in the same general domain. McQuiggan's involved the question of whether there was a judge-made actual innocence exception that could apply to the statute of limitations. And the argument that was made in dissent against that is much like the argument that's been made here today, that 2255H occupies the field. There are two other provisions in the AEDPA that specifically address actual innocence. One of them allowed a second or successive motion. The other one allowed a new evidentiary hearing. And the argument in the dissent was by focusing on actual innocence in that way, the AEDPA had eliminated any further judicial craftsmanship to apply actual innocence as an exception. The majority rejected that, and it read the AEDPA in context. And we think that the same approach is appropriate for H. It does definitely occupy field for new decisions of constitutional law that are to be applied retroactively. That's what is addressed in H2, and it occupies the field with respect to new claims of factual innocence. But it doesn't address statutory claims at all, and that leaves an interpretive question. But the reason it doesn't address them is because it didn't want them to be accorded a statutory effect. The old rule is inclusio one, exclusio the other. But when Congress includes one thing as being according retroactive effect, under the most elemental interpretation of a statute, it did not mean to include the other. It could have broadened H, but it did not. Why doesn't inclusio one, exclusio the other apply here? That was the exact argument that Justice Scalia made in dissent in Perkins, that the AEDPA should be read by specifying certain pathways for relief to exclude others. And the Supreme Court majority rejected that approach and recognized that there is more latitude in the statute to apply doctrines... In that case, wasn't it dealing with questions of actual innocence? It was. All right, well, this is different, is it not? True, but if you concede, Judge Wilkinson, that a person who is actually innocent under a statutory reinterpretation may go over to 2255E and obtain relief, then that refutes the argument that 2255H is exclusive. That is my only point here, is that you cannot have it both ways. Either a person can get to 2255... Not exclusive in a general sense, but in this case, Congress addressed the specific formulation you are making for the exception. When you stood up to argue, you made a formulation for the exception under the Savings Clause, under E, that was directly conflicting with the language in H. You changed it from the Supreme Court to the Circuit Court, and you changed it from constitutional law to statutory change of sentencing law. And it seems to me that formulation just obliterates H, and you wouldn't read an exception to that, to obliterate it. You'd read an exception that accommodates the limitation and goes somewhere else if we didn't cover it. And actual innocence has been held to be the one narrow exception in Jones. But I think the danger is we now... Anybody who finds a sentencing change is going to come under 2241 and ask us for a change. Well, I think that that's not really a likely result. That's not true. Sometimes, Counselor, you can just answer, they're not true. I know you're hard to say, but it's not true, because it has to be retroactive. You know, a lot of things that E, you can't read it out of existence. It has to be both retroactive and cognizable on collateral review, and virtually nothing is other than constitutional claims. Which Circuit's law would you say is going to be retroactive and cognizable? And by that, I go to the, I think it's the 11th Circuit case, which I think is Williamson, may have the name wrong, where it would seem like your argument and the principles you describe as limiting sets up the actual situation, where, as in that case, the petitioner brings his claim to the District Court in the 5th Circuit. It's denied. It's reviewed by the 5th Circuit. It's denied. Later, in the circuit of his incarceration, a different circuit, the issue comes up, and the circuit applies a different law in the direction of the District Court and that district to apply this law, which may require it to then countermand the District Court in the 5th Circuit, which is relying on its circuit. So it seems like to me you've set this conflict up, may not apply in this case that we have here, but it certainly does apply in the real world, where you have the circuits in effect at war over the same case with the same parties, or the same petitioner. In an extremely rare event, that might happen, but I think it might get there. The Webster case involved disagreements potentially over what the facts were in those cases. I don't actually think it was a legal disagreement, but it hasn't been... I see all of these cases nationwide. I haven't seen the practical problems. Is your rule... Will your rule that you pronounce today be redefined by the next harsh case, a case with a harsh result that doesn't fit your rule? No. The rule that I'm talking about... Are you speaking for yourself, or are you speaking for the government? I'm speaking for the government. I think we all know that I can't speak for the future, but I am describing the rule that the government believes is the correct one that addresses a fundamental defect that is narrowly defined... I mean, you said non-crime. That's right. What is the non-crime? You mean the sentence in addition? So, Judge Hedges, I think I need to back up and try to explain why I think this kind of sentencing claim is included. We start from the premise that a person who has been convicted under an interpretation of a statute that is too broad and that is later corrected back to where it should be is actually innocent of an offense. That was the Jones case. The next case, I think, in the sequence would be a person who has been sentenced to a punishment that is above the properly understood maximum. But is that a non-crime or is that a sentencing problem? Which do we have here? Isn't it a sentencing problem? This is a sentencing problem. But you called it a non-crime. Well, I call the non-criminal ones instances like the Jones case involving the application of bailing. So in this case? In this case, I wouldn't call it a non-crime. I would say that equally fundamental to Congress's prerogatives that do not belong to the courts but do belong to Congress is to define the limits of punishment that an individual can get. And so when an individual has been sentenced, as I think I was trying to explain, Judge Shedd, in a circumstance where the correct maximum is 10 years but because of a judicial error in interpretation everybody thinks that it's a minimum of 15 and a maximum of life and the person is sentenced to 15 years. They're serving time that Congress never authorized. Is your rule in any way limited by mandatory life or that's just an application of your rule? That would be an application of the rule. It would be certainly within the court's prerogative to conclude that mandatory life presents a unique kind of defect and to treat this problem incrementally and not go further than it needs to. Why didn't you formulate it that way? Well, Judge Wilkinson, I'm trying to provide the court what I think is the proper analytical path here. And the government's position going forward so that we know what the right implications of the rule are. Yes, and we have had cases involving mandatory minimums that were not life in which the United States has gone to court and said it's appropriate that this individual be able to take advantage of a retroactive decision of statutory construction that establishes that there should have been judicial discretion there and there wasn't. Mr. Dreeben, why wouldn't the Hicks and Miller and Montgomery line of cases be a sufficient rationale in the context of this life imprisonment case without going further, as you suggest, to encompass all cases in which the mandatory... excuse me, the minimum or maximum was erroneously applied? Well, Judge Keenan, it would. And I do think that... So you don't have a problem with that because I think the tester was suggesting that the difference between mandatory life without parole and the ability of the fact finder to make that discretionary determination whether life is appropriate is a significant and fundamental defect when the fact finder is not given that ability. Absolutely. So you'd be satisfied with that, you're saying? I think that the court can resolve it that way and it may be that it would be an appropriate incremental step to take. I will say that on behalf of the United States, there are other people who have cases pending in district courts where they received improper mandatory minimums in light of the reinterpretation of the law. But that's... Your language is precisely what makes me uncomfortable. You recognize it as a step in a sequence and an increment which cuts against, to me, your comforting nostrum that you are providing us with guidance. Because I don't know what your arguments or positions with respect to the next step in the sequence or the next increment are going to be. It makes perfect sense to me that... I understood what Ms. Hester was saying about mandatory life without parole. I do not understand and derive no particular guidance from your formulation about your next incremental argument. Well, my primary argument is that if a decision alters the boundary of punishment by imposing a mandatory minimum that Congress did not prescribe because of a judicial error in construction that's later determined to be corrected and retroactive, that's the rule that I'm sponsoring. But I acknowledge that... And that, I think, is the limit. There's no incremental step beyond that. That's it. But if the court is concerned that it's better to look at this case as a unique case involving a unique and highly consequential error, mandatory life, when the statute really intended that the courts exercise discretion, then I think that that's an appropriate step to take. Now, I realize I've run over my time. I have one question I want to ask. I think the answer can be simple. Would you agree that denying Surratt an avenue for relief would not constitute a suspension of the writ? We're not arguing... I'm not trying to trick you. I'm looking at your footnote in your brief. You still stand by that? We're not arguing that this is a constitutional violation that needs to be remedied or that the court needs to apply principles of constitutional avoidance in order to decide this case. We think that the statute left room in 2255E for the court to remedy this narrow class of fundamental defects, which I have perhaps unsuccessfully attempted to articulate. But that is what we think was left to the court to do, that 2255H did not totally occupy the field and that if it did, the court would have to overrule Jones. If the court tried to limit Jones to actual innocence, it needs a principle for doing that. My suggestion is that if the court analyzes what's at stake in this case, it's equally grave for an individual to suffer the rest of his life in prison with no opportunity for release because of a judicial error that was later corrected. Thank you. Thank you. All right, let's hear from Mr. Goldblatt. Thank you, Chief Justice Praxall. I may please the court. Let me just address one point, which is tangential to the statutory construction, which is going to control this case. But what is at stake here is not, if you rule against Mr. Surratt, that does not mean he's spending the rest of his life in jail. And I think that puts undue weight on the court and forgets that there are two other branches of government that have powers in this area. 3582, the sentencing statute, gives the government the discretion to go into the district court at the request of the Bureau of Prisons and request a reduction of sentence in extraordinary circumstances. You argue that as if that's the saving aspect of the... No. No, let me finish. I'm sorry. You argue that as if that's the saving aspect of what Mr. Surratt faces, in a sense. But our framers, they didn't leave it up to whether or not we have a good king or a bad king. The whole protection, it was intended in terms of a great writ. The limitations and age and all of it, in 1996, it became so limited in the hunt for trying to have an effective death penalty and those type things, that it had done so that it was necessary to really save it from being, in effect, a suspension of the great writ. So in that sense, why should we have to wait for the hand of mercy for another branch when it is before the branch that the framers intended it to be to protect the great writ? And that's why he is there. Most of the arguments this morning have been about age and those kind of things. He was there to make sure you had taken so much away from it. If he wasn't there, it would be detrimental to the framers. So I appreciate that somebody else may come along, but mercy is different than justice. And what you're encouraging us, that it's okay to go ahead and let this through because somebody along the line is going to correct. As Carlisle said, a great Scottish historian and philosopher, he said, it's not to do what lies dimly at a distance, but to do what lies clearly at hand. And what is at hand in terms of the statute, but not to waste of hope. So I'm saying you start out that way as if that somehow softens it because somebody else might do the right thing later on. No, that's not my point. What is your point? My point is the great writ you're talking about, you could never get relief in this case because the fact that you were incarcerated pursuant to a conviction ended the matter. The only power the courts have to look at the constitutionality of the conviction was given to you by Congress. And Congress gave it to you and Congress can take it away. Congress can't suspend the writ, except for under very narrow circumstances. But this is not a suspension of the writ. I know it's not because that's what the saving clause does. That's what I disagree with. Felker v. Turpin said that the race judicata principles in AEDPA were not a suspension of the writ. Mr. Dreeben, on behalf of the government, says it's not a suspension of the writ. It's arguable that if they eliminated any second and successive review, it would not be a suspension of the writ because the reality is Congress dictates what powers the court has. If the statute is clear and it is cutting off under 2255H review of retroactive claims to ones that are announced by the Supreme Court of the United States that are constitutional, it can do that. I don't like AEDPA. We're talking about other things we don't like. I don't particularly like AEDPA. I've been accused of taking a crab view of the statute. It's a crab statute. Mr. Goldblatt, looking at 2255H and then you compare it with EEDPA, isn't it significant that Congress decided to leave intact these adjectives, that the remedy by motion is inadequate or ineffective? Didn't that give the court some direction that the court still has to evaluate exactly what has been done in the case and how egregious the error has been, how fundamental the error has been, notwithstanding subsection H of the same statute? Let me make two responses. One, we have a historical analysis in our brief that gives meaning to both inadequate and ineffective. It's the suspension clause and its practical problems, which are real. If we disagree with you, if we disagree with your historical analysis... If we disagree with the historical analysis, I think the way that most courts have dealt with this is to say, okay, we've got to give meaning to 2255E. And the limiting principle that Judge Duncan was looking for is called actual innocence. That's the limiting principle. And that makes sure that you don't overrule 2255E. But where does that come from, the language of the statute, actual innocence? Actual innocence comes more from the language of the courts. You've got Herrera. You've got the basic concept that is a habeas concept. Okay, so it's departed from the statutory language in order to allow the relief of actual innocence, right? Yes. So why is that departure permissible and no other departure, including life without parole erroneously imposed? Our basic argument is even that limiting principle is questionable. We understand that. Right, we understand. So we get by that. That's the only one you have left that you can manage. And it's interesting that Webster came up because Webster's in the Seventh Circuit. It's the first one with Davenport that went down this road. In the middle of it, Judge Easterbrook was writing statements rather than even asking for rehearing on bond because he knew he couldn't get it. Last year in 2015 in Webster, the Seventh Circuit kept the rule, but the vote was six to five. We're very interested in all that, but I would also be interested in your answer to my colleague's question. Which is where is the limiting principle? Well, no, you've departed from the language of the statute in acknowledging that Jones departs from the language of the statute and accepting the premise that we're not going to do anything about Jones here. Well, I've asked you to put that up, but... I realize that. Assume for a minute that we're not going to do anything. Right, assume for a minute that we're not going to do anything about Jones, then. Actual innocence isn't anywhere in the statute. So why is nowhere in each? I think it's... Nowhere in each. So how does your argument that we have to... We've already departed from the statute, so don't we have to then decide in what instances it is appropriate or constitutionally mandated to depart from the statute rather than just simply say we're bound by the language? We've already departed from the language. He's departed from the language, but I think that the departure from the language had limiting principles built into it, and the court has always used actual innocence and said when using it as a judicial tool, don't stretch this. This is supposed to be kept rare. Even a case like McGuigan, it repeats it, using it now. The reason it's there is because fundamentally, in habeas terms, the concept of keeping someone in custody who has committed no wrongful act is at the core of what habeas is about. That's where actual innocence comes from. That's why it's there. Wasn't that derived from Teague, the actual innocence? I'm not sure I'm following, so I don't want to go down this route with you. It's going to get worse for me, so I'm sorry. No, no, no. Teague indicated, you know, the new rules of constitutional law were not to be retroactive except in two very basic ways. And one of those ways would seem to, one of those formulations would seem to incorporate a case where someone was found actually innocent. I think that's true. I mean, it's a fundamental concept. It's been a safety valve that's been used in a number of different contexts. Actual innocence is a gateway to excuse procedural defaults. Actual innocence is a fairly recognized exception in the law. To excuse procedural defaults that were judicially created. That's why McQuiggan was a much harder case because that's the first one to ever apply it to a statutory bar. I thought you were going to carry a little bit further the notion that the exception really was to allow this parallel statute, which is not a habeas statute, to accommodate the fuller procedure of a habeas statute when there's actual innocence. In other words, newly discovered evidence for actual innocence is addressed, but there may be other circumstances of actual innocence that are not addressed, and that's really where the core of habeas. But this statute is intended to put this whole procedure in the sentencing court and be parallel to the habeas statute, as I understand it. It was intended to be very parallel, and to the extent it didn't fulfill habeas, you still had that safety clause. I think that's true. It was designed to make sure that when habeas was moved from 2241 to 2255, it was intact. So there was a requirement, and that's how Sanders got decided and Davis, that you couldn't construe 2255 to provide anything less than 2241. That's why when AEDPA was passed, Congress was very careful to make the restrictions on second and successive review in overruling Sanders to apply to the habeas statute and 2255. So the parallel is there. They exercised their prerogative to limit the authority to consider second and successive petitions, and that was a main concern that led to AEDPA passing in the first place. And the problem that you heard in the arguments from the other side is there's no limiting principle. They're attempting to use 2255E to essentially abrogate the primary reason why AEDPA was passed in the first place, and that can't be right. Maybe there's an argument for actual innocence. I'm not sure you even have to address it here because this case is not about actual innocence. It's just not about it. I mean, it's been this type of thing. And the fact that it's a life sentence I don't think changes it because if you look at even when the Supreme Court extended actual innocence to the death penalty, it limited it to eligibility for the death penalty, not whether a jury would necessarily have found the death penalty anyway. It had to be eligibility. Right, but the Supreme Court recently in its cases has been discussing the improper stripping of discretion in terms of life sentences and that the sentencer should be... that there's a due process violation. Yes, but that's also as a matter of constitutional law. This is different in the sense that we're talking about whether review is proscribed by the habeas statute, not whether if you get review, how does it come out. So in other words, there was one case where it came through, the name is holding me for the second, where it came through on a first 2255, and there you might get relief for a Simmons violation. If it was preserved, if you had no procedural defaults, you filed it within one year and everything else was fine, you might get 2255 first review. When you say that there's... I'm sorry. When you say that there's no limiting principle... I'm over here. Okay, I'm sorry. It's me. When you suggest that there's no limiting principle, are you making that argument as a matter of theory or in practice? Because as I understand it with respect to this case and this particular class of defendants, if I remember Judge Gregory's dissent correctly, we're talking about a very finite number of prisoners who would be eligible for relief under this particular... to proceed under the Savings Clause. In other words, is there really a floodgates problem that we're going to be dealing with here? There's a floodgates problem if you can't, on a principal basis, confine it to life sentences, mandatory life sentences. And even if you can do that... But the other limitation is that the law has to be clearly settled at the time that the prisoner has the right to petition for collateral review. Doesn't that limit it somewhat? You mean in terms of procedural default? That's right. It limits it somewhat, but the law does change. And we're talking about... In other words, when you come up with that rule, then... so let's say it's a life sentence. Is 50 years going to be that much different? Is there a principal basis to change one from the other? But the point, from my standpoint, is you also have to look at the statute and see what Congress wanted. We're not even talking about... In other words, let me take it back a step. When you look at In re Jones, what they did was, at that time, the thinking was Congress made a mistake. They didn't anticipate statutory claims that could be significant. So we're going to figure out a way to send those through the savings clause. But they kept the requirements. It wasn't an issue in Jones because it was Bailey. But most courts kept the requirement that it be a Supreme Court decision. It couldn't be a circuit court decision, and I don't think there's only one other circuit that I know of that would allow it to be a circuit court decision. And it has to be actual innocence. But they kept the other provisions in the statute. They didn't just say, well, once you get through the savings clause, the entire statute's gone. That's why, in using the gateway that you used for 2255B, fine, if you want to apply it to a statutory claim, you can do that, but it still has to be a Supreme Court decision. Because the reality is, from Congress's standpoint, Hart, Simmons, for all I know, and the Court is well aware, the Supreme Court comes down with a decision next week in which they're both wrong. And what Congress wanted was nobody's getting back into court until the final court has the final say. Mr. Goldblatt, we've heard several themes that have run through this argument  One is, what is the limiting principle? And number two is, how do you override the specific directives directed to this specific case by 2255H? And we've thrashed around about a limiting principle and whether it should be limited life sentence or whether it should be broader and if it should be broader, how much broader it ought to be. And we've tried to somehow get the words ineffective and inadequate to override the specific directives of 2255H. But when you're confronted with two legal and analytical, I mean, either one of these problems would be significant in and of itself. When you're confronted with a basic statutory interpretation problem plus a basic problem of not being able to ascribe a limiting principle to the non-statutory test, whatever it is. It's one thing to prescribe a non-statutory test. It's another thing to say, not only am I prescribing a non-statutory test, but I can't tell you really what it is or how it's limited. That's a pretty serious defect in an argument, isn't it? It's several defects in the argument. And I think if you read the panel opinion, I mean, you go on and on to the various problems that are posed, any one of which would knock this out. And the only way they can get around it is by a very broad-based rule, and they've been candid about that. Mr. Goldberg, if you could flip back, though, to the language of the savings clause and saying we disagree with your historical proper as to the reason for that language, what's your second-best argument? My second-best argument is that there's a difference between relief being unavailable and inadequate or ineffective. That's a balancing, though, doesn't it, of some sort? If we disagree with your historical proper. If you disagree with the historical interpretation, then I think you would have to look at this, and the only thing that would make it inadequate, in other words, I don't think you can say that it's inadequate because it requires a Supreme Court decision. I just don't see how you can square that up. That's Congress's prerogative. I mean, that's unavailable. They have the right, and it would be anomalous, because what you'd be saying is if it's constitutional, you have to wait for the Supreme Court to say it. And as you're all aware with Dodd, that has huge implications. But if you're going to use the savings clause so statutory claims can be raised from a circuit court, then you've taken the statute and turned it on its head. I don't see your position. I just want your take on what that language means if we disagree with your historical proper. If you disagree with the historical proper and the language becomes unclear, I think that you have to give it meaning that is consistent with the rest of the statute. Okay, and what is that? I think that's actual innocence. I don't think it's anything more than that. Well, where do you read actual innocence to inadequate or ineffective? To include actual innocence but exclude mandatory life imprisonment erroneously applied. How do you read that into inadequate and ineffective? I read it into inadequate and ineffective because having someone incarcerated who is innocent is a basic core principle of habeas law, and that's what actual innocence comes from. A mandatory life sentence in a statute, if it was a mandatory life sentence that otherwise could be no more than 20 years, that's something the courts have looked at and said that's the same as actual innocence. That could come through as well if it exceeds the statutory maximum. You can't get that in the courthouse. You said there were alternatives of what, commutation? It's more than commutation. What else? What other alternatives? 3582. That's for the court. What? 3582 is in court. No, there's a provision 3582C that provides that the bureau of prisons may go to the district sentencing court and ask for a reduction. You have to go to court. But you said that there were alternatives to court proceedings. No, no. Either commutation or alternative to habeas. Alternatives to habeas. What about Rule 48? I don't think Rule 48. It hasn't been raised, so I'm not sure where that would come from. Well, you're with Rice v. Rivera. Rice v. Rivera was talked about here a while ago. The guy that came in. They said the fellow was actually innocent and moved to vacate the conviction. And we said they had authority to do that. Well, then that was one more. It was a Bailey case. It was a Bailey case, like Jones. Then that's just Rice v. Rivera. One more like 3582. My only point there is the habeas statute is limited. Congress has a great deal of authority to decide what it covers and what it doesn't. And that does not mean by saying that it's unavailable here that you're upholding this sentence. I don't disagree. I think the court, from its voice, doesn't disagree that this should be reviewed. But to say that habeas is the only way that can happen and that Congress has no authority here to cut it off because it's some form of fundamental error won't work. The savings clause is not that broad. If you open it up that way, it's going to produce all sorts of problems. And I don't think you can get around the fact that this is- You mean the problem that people who should have been sentenced to life without parole might have a chance to go back and have a review? Would that be a problem? I don't think that's a problem. I just don't think it's available in habeas. I think there are other ways to get that remedy. You read everything out of it. Why did they use the word detention rather than conviction? Does that just happen statutorily? Well, detention is the term that habeas normally uses because you're dealing with a custodian holding someone. That is what you're targeting in that situation. So I don't think- So you have an answer, Professor, for every historical aspect of every word. So detention, that really means something- I don't disagree with you on the fairness side of this, but I just don't think it's a fairness question. That's not the issue. Because the statute terms you read everything out. I mean- Well, no, it really didn't mean that. It means- So detention meant just the people holding them, right? It's just a perfunctory aspect of whoever's holding you, but it didn't mean it includes your sentence as well. That's what you're saying? I'm saying that Congress wrote the statute in a way that it doesn't reach this problem, and you can't use it to solve the problem out of a sense that that's what the Great Writ is for because the Great Writ would not have solved this problem either. Counselor, can I just clarify something? Over here. The ad hoc limiting principle you're giving us, actual innocence, I did hear you refer to statutes that are in excess of the legal maximum, but is that something that you think can be addressed under the Savings Clause or not? I wasn't clear on where you were on that. And I guess that would address Tina's concern as to where it is the same. Several courts have indicated that a sentence that is above the statutory maximum would qualify as actual innocence or be akin. That would be something else that the Savings Clause could reach because that would be a sentence that Congress has not authorized itself. But Congress didn't authorize here a mandatory life sentence. That was not authorized by Congress. Congress, at best, authorized a discretionary life sentence. So how isn't this in excess of the maximum? You can analyze it that way, but that's not consistent with the way the court has done it with regard to calculating sentences. And the fact that it's mandatory is a calculation issue, and I don't think it's going to – in other words, I don't see a principal distinction between a mandatory life sentence and a situation where a life sentence is authorized. And if you follow that – Is that the point of the juvenile life sentence case? Because that was a constitutional Eighth Amendment problem. We're beyond that. We're now talking about when can you get back in the door to raise a second and successive claim, and it's cut off as Congress has dictated. And I don't see a mandatory life sentence as being the same thing as actual innocence. It's a calculation error. It's the worst one. You know, it's at the top level, but it is below the death penalty. And even in the death penalty cases, you don't get – if you're eligible for the death sentence, then you don't get relief, and he's eligible for a life sentence. And I don't think you can say he's not eligible for a mandatory life sentence and create a different crime. You made a point there that is interesting, and I just want to make sure I understand it. You said – I think you said you don't see essentially the difference between a mandatory life sentence in terms of sentencing purposes and one that's therefore discretionary that can be given, that they're basically the same. And yet here you have a district court judge who struggled mightily on at least two occasions. It was pretty clear he didn't want to do it. He says, I've got to do it. I don't have a choice. Isn't there a difference between – when you're answering Judge Harris's question, between this imposition of a maximum sentence through – that is imposed as a result of an incorrect interpretation of congressional law, which if you accept the law as it is, Congress didn't intend this to be the law, and yet this is what he has. I don't think it's a difference in this context. And there are a number of other factors that get into this, because you mentioned what the sentencing judge said. There are – if we get beyond even this point, and it goes back to the original point that Judge Agee had about Rice v. Rivera, there's also an issue that I've raised here that maybe Judge Mott's another one that I should travel on. But there's a guilty plea in this case. He pled guilty and negotiated an arrangement with the government that he would cooperate, and in return for cooperation he was going to get a reduction that would take it out of the life sentence. That was the plea agreement that was negotiated, and he waived his right to appeal. He was even aware of this issue at the time they discussed it, because he preserved the right to challenge the mandatory life sentence. The panel in this case did not rely on that, did it? They didn't address it one way or the other. But did they rely on it? If they relied on it, they would have said that they were relying on it, right? No, they said they did not – they had no occasion to reach it. They didn't reach that, and they didn't – Well, the government didn't assert it. The government didn't assert it. And we have always held that the government can waive a guilty plea. But, again, I think Judge Monson, in that area where it's an issue that we raise, but if it's not getting me anywhere, it's not getting me anywhere. Can we just go back to – That's a matter that's up to the United States Attorney. You were appointed to defend the district court's opinion, district court's ruling, as I understand it. That's correct. Right. And so when the panel considered it, it seemed to me it had a – it accepted Jones as our law, accepted everything that was circuit precedent as circuit precedent in a way that you don't want to. But if we go back to the panel opinion, which I think you would still defend, right? Yes. It's a secondary – not your favorite opinion, but your secondary opinion. And I thought, in response to some answers from my colleagues, you said, well, okay, this provision would apply if you were actually innocent. That is the sole place where this would apply, and that's it. Is that correct? Actual innocence of the crime of conviction. Right. Well, the Supreme Court has said, not just the government, but the Supreme Court has said that upping the ante for a criminal defendant and the fact it does so forms the, quote, functional equivalent of a new aggravated crime. That's a lien. And we use that language in Simmons, on bank. And you haven't suggested that Simmons is error, right? Too many issues in this case already, so I wasn't going there. That's for purposes of the Sixth Amendment analysis. I don't think it's relevant to the habeas analysis. I just don't think it is. And if you open this up to all mandatory minimums, then, Judge Diaz, yeah, you're going to be getting a lot of cases. They're completely different analyses. And keep in mind, most importantly, what is a lien exempt from that rule? Recidivist enhancement of punishment by virtue of prior convictions. What is Almendarez-Torres exempt from the basic rule as well, that a lien is based on apprendi? Exactly what we're talking about here. So I don't think that gets you anywhere. Mr. Goldbart, one thing I'm just not entirely clear on in your petition is, would a defendant who had been erroneously convicted above the statutory maximum in an active sentence, would that person be entitled to relief under 2255 in your view? In my view, I take two positions. My primary view, which basically I don't think is going to resonate here all that well. Just shut the door view. Yeah, shut the door. But secondary view, one decided, we left it open when we briefed it before the panel as an open question. But I think that presents a conceptually different question where the extension from actual innocence to a sentence above the statutory maximum might work. Okay, but why isn't the mandatory imposition of life imprisonment stripping the sentencer of discretion an increase not authorized by Congress? If Congress has said that the sentencer is entitled to, and in fact must consider the discretionary range of punishment, and then you're saying no, that the mandatory imposition of sentence doesn't make any difference. Why isn't that an increase in the punishment, the mandatory imposition of life? If the mandatory really puts it... That's in the actual context it is. If the mandatory only pushes you to the top of what is otherwise authorized by Congress, I do not see that as changing the penalty for the offense. I don't see any way a mistake made as to whether it's mandatory or not would make any difference if it was a wrong calculation that resulted in somebody spending 10 more years in jail. But what if it resulted in spending 60 or 70 more years in jail, and the ACCA only 15? I think any of those are calculation errors. First, habeas, maybe. Second, under the terms set by Congress, no. So I think it's the statutory language. I don't think you can stretch 2255E to override 2255H in those circumstances. What you're saying is simply that there's a bright and discernible line between questions of factual innocence and any sentencing issue? That's correct. Because you can always find sentencing issues that you think are too strict or unjust or whatever. And so that's where we're headed is that a later interpretation that makes an earlier sentence seem inadequate or ineffective, and that's enough to make 2241 relief available. I don't think you can go there. With permission, take 10 seconds. The other thing, Judge Keenan, is you've still got to deal with the fact it's not the Supreme Court. And I don't think you can use 2255E to just wipe away all the other provisions. Maybe it's the fact that it's statutory, but the fact that it's not the Supreme Court, Congress has the ability to insist that nobody gets into court second and successive without a Supreme Court ruling. David Jones wasn't Supreme Court either. It was Supreme Court. It was Bailey. Oh, okay. It was Bailey-Basley. It was Supreme Court. That's why they didn't have to address the issue. Of course, you can make the argument that this is Carachuri-Secundo. Right. Simmons also was connected to a Supreme Court decision as well. It was not announced by the Supreme Court. It has to be announced by the Supreme Court as well as be a decision of the Supreme Court. So merely applying Carachuri, and it has to be made retroactive by the Supreme Court. You don't have that here either. Because it's not required in E. Because Congress could have put that there, but it couldn't. It didn't. I guess the rule of lenity doesn't apply here anymore, does it? My point, Judge Gregory, is I don't think you – if Congress wants to cut it off, it can and it did. That's my point. And these other arguments just don't work. It didn't cut it off by statute. I understand that's your opinion. Well, that's the issue. If they did cut it off by statute, they can. If they did, I agree with it. You said, I think, if they had. That's correct. But you certainly don't think they did. You don't think they did because you think they cut it off. I think they cut it off. But the words don't say that. And I think the argument you heard and the inability of my colleagues to give you limiting principles as to where this is going, plus where it went in the Seventh Circuit, is indication of what's wrong with the argument. Thank you, Mr. Goldbach. Ms. Hester? Mandatory life is a different and harsher sentence than discretionary life, and there's two reasons for that. The first is recognized in Miller, and that's that mandatory life means that there is no individualized sentencing that takes place when the court imposes it. Would you limit relief here if you got it to mandatory life sentences? The court could decide to... I'm asking you. Would I? Well, that's hard for me to answer because I have other people who have mandatory minimums that are not life, but I think that that's a valid way... It's been raised by other members of the panel about whether mandatory life is different from any other sentence and whether that's part of some incremental concepts. I'm asking you if the court... Is that something you would urge the court to do? I do urge the court to do that in this case because mandatory life is different from any term of years, and I think that it requires special consideration. I want to point out another thing... You would be perfectly happy if there was an opinion which limited this to mandatory life sentences and just address the thing incrementally because then we wouldn't get into the... In your view, you wouldn't get into the whole question of a limiting principle and the formulation of it and the vagueness which is formulated, et cetera. That's right. But you would argue in other cases there are other limiting principles that might apply. I will. I would have to. I think you will. In other words, you're glad to win today, but you want to win tomorrow, next week. Certainly do. I don't blame you. You're saying you'd be perfectly happy? That's what Judge Wilkinson said. Well, not perfectly happy. Perfectly happy. I mean... You'd be perfectly happy. You said yes. To get Mr. Surratt released, then that's good. I want to point out another difference... Then I'll let you go on. In the next case, the defendant was sentenced. The defendant was 60 years old, sentences 35 years in the penitentiary. Is that going to be the equivalent of mandatory life in the next case? I don't have that situation. I know that. I can't say. Yes. Well, not in the Simmons. I'm pretty familiar with the Simmons rule. I know that is not coming up. I want to point out one more difference. We do need to get to this greater question. I don't know if you've heard the previous case. We had a case just before where it may not have made a difference one way or the other to the defendant, but we dealt with the issue because it can come up again. And that's the important part of this case here. If we can duck out and carve another exception, now go here. But we know we're going to be sitting back... You are going to have to decide it because the cases are pending. So it will be back. One other difference between discretionary life and mandatory life that I want to be sure to point out is the fact that if Surratt had gotten discretionary life in this case, he would have been eligible for two crack reductions so far. But the mandatory label has prevented him from being eligible for any reductions based on a lowered sentencing guideline. So that is a concrete distinction between a discretionary life sentence and a mandatory life sentence. I want to talk for a minute about the actual innocence case that amicus relies on to point out to the court that those are all in the context of the actual innocence gateway around procedural default, which is a Judge May rule. In this case, we're not talking about a Judge May rule. We're talking about the savings clause, which is a statute, and it has particular terms in it that have to be followed. And one of those terms is detention. It allows a person to seek relief from his unlawful detention. And that certainly... And my question in that regard simply was framed to indicate that that is an exception that is made in other contexts as well in the collateral review. Right. And I think there's some muffiness about using the same terms in different contexts, but it is a totally different context than here, where you're talking about having to interpret a statute that Congress has enacted, which extends relief to people who are challenging an unlawful detention, not just an unlawful conviction. And we know that Congress knows the difference because it distinguished between those two things in subsection H. And if it had wanted to do that here, surely it would have amended the savings clause. So how do you deal with the two words, to test? To test? Well, he's unable to test it because there is circuit precedent against it, which would result in a summary reversal and his inability to get a certificate of appealability. By definition, a successive petition has already tested the detention in the initial petition. I mean, the initial petition wasn't filed just to, you know, have a nice Sunday afternoon conversation. It was filed to test the detention. That was the whole purpose of the initial petition. But not to test on these grounds, Your Honor. And furthermore, if you interpret test to mean that all that that requires is the opportunity to file a paper at the courthouse, basically you're likely... The test has a very specific meaning, which is that it was testing whether the detention was imposed in accordance with the laws that existed at the time. That is really the most we can do, given this statute, to a defendant is to say, we will follow the rule of law when we impose this punishment. And the test means that you have tested whether in the initial proceedings, trial, the plea hearings, direct appeal, whether the state followed the rule of law. And if you have a basic opportunity to test whether the rule of law was observed, then the requirements of the statute, it seems to me, have been satisfied. That's what that language means. Well, if you interpret the savings clause to mean that, then there's nothing left of the savings clause. Indeed, we would have to overrule in Ray Jones, because it didn't have that interpretation. That's correct. I want to add one more point about actual innocence, and I believe Judge Motz, that you brought this up, about whether a person can be actually innocent of a... I know what your position is. Okay. Well, on that note, I thank the court. Thank you for those arguments. Ms. Gilblad, we know that you're a court appointed. We appreciate very much your undertaking representation of the judge in this case. We're all personally appreciative of that. I'll ask the clerk to adjourn court, and then we'll come back to brief counsel.
judges: Traxler, Wilkinson, Niemeyer,Motz ,King, Gregory, Shedd, Duncan, Agee, Keenan, Wynn, Diaz, Floyd, Thacker, Harris